UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**BARBARA NEWMAN,**                 )
                                    )
       **Plaintiff**             )
                                    )
       v.                        )    **Civil Action No. 12-10078-DJC**
                                    )
**METROPOLITAN LIFE INSURANCE**     )
**COMPANY, et al.,**                )
                                    )
       **Defendants.**           )
_____ )

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                 **September 16, 2015**

## I.  Introduction

Plaintiff Barbara Newman ("Newman") brings this action against Metropolitan Life Insurance Company ("Met Life") and Lehman Brothers Holdings, Inc. Group Benefits Plan (the "Plan") (collectively, the "Defendants"), under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 *et seq.*, alleging that the Defendants improperly terminated her short term disability ("STD") and long term disability ("LTD") benefits. D. 103 ¶¶ 53-55. Newman further challenges the Plan's alleged decision to deny her benefits under the Supplemental Contributory Long Term Disability plan ("Supplemental LTD"). Id. ¶ 53. The Defendants have moved for judgment on the administrative record. D. 161. For the reasons set forth below, the Defendants' motion is ALLOWED.

## II.  Factual Background

At the outset, the Court notes that Newman's papers and presentations are rife with unsupported allegations. The Court has attempted to address her various assertions, but, as discussed below, many of Newman's factual contentions are unsupported by the record.

1

### A. The Plan

Newman commenced her employment with Lehman Brothers Holdings Inc. ("Lehman Brothers") in May 2007. D. 155, Administrative Record ("AR"), at 2137; D. 163-1 at 2. Newman participated in both the STD and LTD plans. AR at 3788; D. 163-1 at 2. The STD plan provided 60% of the employee's Insurance Earnings, as defined by the Plan, up to $500 per week for 26 weeks, in the event an employee were to become totally disabled. AR at 3900-01. The LTD plan comprised of two components: Basic LTD and Supplemental LTD coverage. Id. at 3902. Basic LTD coverage provided benefits to those who were deemed "totally disabled" and "unable to work for more than 180 consecutive days." Id. It provided 60% of an employee's insurance earnings, up to $50,000 per year. Id. New employees were automatically enrolled in both the STD and LTD plans. Id. at 3789, 3900, 3902.

Unlike the STD and LTD plans, enrollment in the Supplemental LTD plan was not automatic. Id. at 3902. "Eligible employees must enroll within 31 days of their date of hire, or within 31 days of becoming an eligible employee due to change in status." Id. In addition, employees could enroll in the program within 31 days of a change in family status, including marriage (or domestic partnership); divorce; birth or adoption; spouse or partner's employment or unemployment; unpaid leave of absence; return of a dependent child to school; and death of a dependent. Id. at 3902-03. Employees who failed to enroll for Supplemental LTD coverage within the 31-day period, from the date of hire or change in employment or family status, were "required to furnish proof of good health before being accepted for coverage at a later date." Id. at 3902. Employees received STD and LTD coverage at no cost to the employee, but employees had to pay for Supplemental LTD coverage. Id. at 3900, 3902-04. If an employee opted for

Supplemental LTD coverage and then became totally disabled, she would receive 60% of her Insurance Earnings over $50,000, up to $300,000 in Insurance Earnings. Id. at 3902.

### B. Newman's STD and LTD claims

In July 2007, Newman sustained neck and back injuries in a fall. Id. at 1732. The continuing effects of her injuries ultimately caused Newman to stop working. Met Life's records indicate that Newman's last day at work was March 11, 2008. See e.g., id. at 250. Met Life bases this date on records provided by Lehman Brothers, including documentation provided by Newman's doctor. D. 162 at 6. Newman's doctor wrote on March 12, 2008 that "[d]ue to [Newman's] condition I am recommending that she not return to work [until] further treatment and evaluation, which is scheduled for April 14th, 2008" and "[w]e are going to keep her out of work now." AR at 1730, 1731. Met Life also points to Newman's doctor's indication that he "disabled [her] from work on 3/12/2008." D. 162 at 6 (citing AR at 3026). Another form completed by Newman's doctor (or someone from his office), dated May 22, 2008, stated that he advised her to stop working on March 12, 2008. AR at 2998, 3002. Finally, a form dated July 1, 2008, noted that Newman was unable to work starting March 12, 2008. Id. at 2923-24.

Newman contends that she "was physically able to work" until April 16, 2008 and appears to suggest that date as the proper start date of her STD benefits. D. 163-1 at 2; AR at 2771-72. A letter from Met Life to Newman dated April 16, 2008 indicated that she requested disability benefits on that day. AR at 749. Newman claims that a Lehman employee "illegally submitted information to MetLife . . . without my permission in writing or my doctor's permission in writing to knowingly and purposefully retaliate against me through her unlawful submission." AR at 2771-72.

Newman's claim for STD benefits was approved, ultimately for the maximum 26-week period. See id. at 1454 (extending benefits through September 16, 2008, the "maximum time allowed under the plan"). She received STD benefits beginning March 12, 2008, id. at 377, 2824, but the benefit payments were paid to Lehman Brothers, Newman's employer, through September 9, 2008 because Lehman Brothers paid Newman during that time period pursuant to its salary continuation program. Id. at 377, 2765-66. In other words, Newman's STD benefits were offset by the salary she received from Lehman Brothers.

Newman also sought LTD benefits. Id. at 1363 (letter from Met Life advising Newman that her claim was being reviewed). While Met Life considered her eligibility, they paid Newman's claim under a reservation of rights. Id. at 1044, 1363. Met Life initially closed Newman's claim due to her failure to supply requested documentation. Id. at 1189, 1343. In January 2010, apparently having reopened the claim, Met Life denied Newman's claim based in part on an independent medical examination. Id. at 1024-34. Newman appealed, and Met Life reversed its decision, concluding in September 2010 that Newman was entitled to receive LTD benefits. Id. at 586. Newman has received and still receives basic LTD benefits, although her payments are offset by her Social Security disability benefits.[1] Id. at 75.

### C.  Newman's Attempts to Obtain Supplemental LTD

Newman did not elect to enroll in the Supplemental LTD plan within 31 days of her date of hire. See AR at 831 (Newman's acknowledgement that enrollment in the Supplemental LTD plan was not automatic). At a later date, she sought to enroll in the program, requiring her to

---

[1] The record does not make clear why Met Life was not aware of the Social Security disability benefit, but Newman received both Social Security disability and LTD plan benefits for a period of time, resulting in an overpayment by the Plan of $28,325.47. AR at 75. The Plan stated its intent to withhold payment until Newman reimbursed the Plan for the overpayment. Id.; see id. at 2473.

4

submit proof of good health by completing a Statement of Health and obtaining approval from Met Life. Id. at 3902, 3940; see id. at 831.

In August 2008, after Newman had stopped working due to disability, Newman wrote to Lehman Brothers and Met Life that she had not been "able to make amendments to add long term disability supplemental insurance to my enrollment." Id. at 2868. On September 10, 2008, Newman emailed representatives from Lehman Brothers and Met Life stating that she had been denied Supplemental LTD benefits "by shutting me off from all benefit information, making sure I missed the cut off date." Id. at 2772.

The first time a Statement of Health from Newman appears in the record is on March 23, 2009, when Newman faxed a Statement of Health form, dated October 8, 2008, to Met Life.[2] Id. at 2448, 2454-55. The record contains a second Statement of Health form, this one dated February 4, 2008, which was faxed to Met Life on December 11, 2009. Id. at 660-63. Newman maintains that she submitted the February 2008 Statement of Health form to Met Life on February 4, 2008. Id. at 3664 (letter from Newman to Met Life dated April 19, 2010 stating "I am eligible for coverage under my employer's [Supplemental LTD] plan guidelines and submitted the application providing evidence of insurability . . . on February 4, 2008"); D. 163-1 at 2 (repeating allegation that Newman submitted a Statement of Health form to Met Life on February 4, 2008 and that Met Life "acknowledged the request" by letter).[3] Met Life informed Newman twice in February 2011 that it had not received a Statement of Health prior to

---

[2]Met Life points out that Newman addressed the fax to an Operations Manager in Met Life's disability department, not to the Statement of Health Unit, which was how Newman had been instructed to submit the form. D. 162 at 10.

[3]The letter from Met Life acknowledging Newman's Statement of Health submission is not part of the Administrative Record despite a request from Met Life's counsel to Newman and her former attorney that they provide it. D. 165-1. The record reveals no reference to a February 2008 application for Supplemental LTD benefits or Met Life's acknowledgement of the same, other than by Newman. AR at 809.

December 2009. AR at 250 (letter to Newman noting her insistence that she signed the application for Supplemental LTD on February 4, 2008, but disclaiming "record of receiving this application, or approving the Supplemental Insurance coverage, prior to your date of disability on March 12, 2008"); AR at 3653 (indicating that the first time the Statement of Health dated February 4, 2008 "arrived at the MetLife Statement of Health unit was on December 14, 2009"). Met Life declined Supplemental LTD coverage to Newman because she had not timely submitted the Statement of Health and been approved for coverage prior the commencement of her disability leave. Id. at 250.

### III. Procedural History

Newman, proceeding *pro se*, brought this suit on January 12, 2012 when she filed her original complaint, D. 1, which she later amended. D. 4. Several defendants moved to dismiss the amended complaint. D. 41. The Court granted the motion in part, denied it in part and permitted Newman to amend her complaint in part. D. 57. On May 22, 2013, Newman, still proceeding *pro se*, filed a revised complaint, D. 67, which several defendants again moved to dismiss, D. 71, 77. On March 5, 2014, the Court granted the motion in part and ordered Newman to file another amended complaint limited to the ERISA claim now before the Court and a claim under the whistleblower provisions of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A. D. 98.

In November 2013, Newman secured counsel. D. 84. She filed the operative complaint, the second amended complaint, on April 24, 2014, alleging violation of SOX; improper termination of benefits from the STD and LTD plans; improper denial of Supplemental LTD benefits; and a claim for equitable relief. D. 103. Several defendants successfully moved to

dismiss the SOX claim and the claim for equitable relief, leaving only Newman's present ERISA claim against the Plan and Met Life.  D. 137.

The parties agreed that Newman would file a motion for judgment on the administrative record by June 1, 2015.  D. 141, 142.  On February 23, 2015, Newman moved to discharge her attorney and, on April 1, 2015, her attorney moved to withdraw.  D. 144, 147.  The Court permitted her counsel to withdraw on May 5, 2015, stating that the scheduling order and its June 1 deadline remained in effect.  D. 152.  Newman failed to file her motion, instead seeking an extension, D. 156, which was denied.  D. 158.  The Defendants moved for judgment on the administrative record on July 1, 2015.  D. 161.  The Court held a hearing on the pending matter on August 17, 2015 and took the matter under advisement.  D. 166.

## IV. Discussion

### A. Standard of Review

Because the Plan grants Met Life discretionary authority to determine whether Newman is eligible for benefits, AR at 3913, its decision to deny benefits will stand unless it was an abuse of discretion.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Colby v. Union Sec. Ins. Co., 705 F.3d 58, 61 (1st Cir. 2013); Medina v. Metropolitan Life Ins. Co., 588 F.3d 41, 45 (1st Cir. 2009); Gannon v. Metropolitan Life. Ins., 360 F.3d 211, 212-13 (1st Cir. 2004).  "In the ERISA context, this metric is equivalent to the familiar arbitrary and capricious standard."  Colby, 705 F.3d at 61.  "In other words, the administrator's decision must be upheld if it is reasoned and supported by substantial evidence."  Gannon, 360 F.3d at 213.  "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary."  Id.  Aetna's determination must be "plausible in light of the record as a whole."  Colby, 705 F.3d at 61

(quoting Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002)). The role of the Court is not to determine which determination is correct, but "whether the insurer had substantial evidentiary grounds for a reasonable decision in its favor." Gannon, 360 F.3d at 216 (quoting Brigham v. Sun Life of Canada, 317 F.3d 72, 85 (1st Cir. 2003)). "In order to withstand scrutiny, the plan administrator's determinations must be 'reasoned and supported by substantial evidence.' In short, they must be reasonable." Colby, 705 F.3d at 62 (quoting D & H Therapy Assoc. v. Boston Mut. Life Ins. Co., 640 F.3d 27, 35 (1st Cir. 2011)).

Newman's argument that her denial of benefits is entitled to *de novo* review is misplaced. D. 163-1 at 6. Newman relies on Firestone, 489 U.S. at 115, but misreads its holding. The Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. The Plan at issue here gives Met Life such authority: "The Plan Administrator has the discretionary authority to make all decisions in connection with the administration of the welfare benefit plans including . . . decisions concerning the eligibility of any person to participate in the welfare benefit plans and any benefits to which a participant . . . is entitled." AR at 3913. In addition, the Plan states that "[d]ecisions and determinations of the Plan Administrator are final, conclusive and binding upon all parties . . . ."[4] Id.

---

[4] At the hearing on the pending motion, Newman raised for the first time the argument that she is entitled to a more favorable standard of review because Met Life has a conflict of interest in that it both makes benefits determinations and pays the benefits. D. 167 at 24. Where an ERISA plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket . . . . this dual role creates a conflict of interest." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). Where such a conflict exists, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." Id. Ultimately, however, Newman received both STD and LTD benefits and her complaint comes down to the denial of Supplemental LTD coverage and

B.  **STD and LTD benefits**

Newman argues that "[t]his Court must conduct a plenary proceeding in evaluating the STD Plan's decision to terminate benefits and the LTD Plan's decision to terminate benefits." D. 163-1 at 7. This argument lacks any factual basis given that Newman received the entire 26 weeks of STD payments, AR at 513, and continues to receive basic LTD benefits. D. 162 at 8; D. 167 at 19 (Newman stating that she is "still on long term disability"). Newman appears to direct her challenge to the adverse determinations regarding her LTD benefits that were overturned upon her appeal. See D. 163-1 at 2-3 (stating that Met Life denied Newman's LTD claims in November 2008 and January 2010 but also noting that Met Life reversed its decision in August 2010). Newman thus ultimately succeeded in her claims for STD and LTD benefits, and there is no denial to be challenged. 29 U.S.C. § 1132 (a)(1)(B) (cause of action exists to recover benefits due under Plan terms).

Newman nonetheless appears to assert that she was never paid STD benefits. D. 103-1 at 4 (stating "Salary Continuation was paid to Plaintiff, NOT short Term Disability Benefits"), 5 (asserting that Newman "never made a contribution to STD benefits as Plaintiff was never paid STD benefits"). Newman references Lehman Brothers' salary continuation program, but seems to misunderstand its consequences with respect to her benefits. The Plan explains that "[a]ll benefits under the STD plan must be coordinated with any benefit you may receive under the

---

she has not shown how any of the actions taken by the Defendants were improperly motivated by any alleged conflict of interest. This is particularly true here where a decision to award at least some benefits "manifest[s] an approach demonstrating an unbiased interest that favor[s the claim applicant], making the conflict factor 'less important (perhaps to the vanishing point).'" Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 362 (4th Cir. 2008) (quoting Glenn, 554 U.S. at 117); see Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998) (stating that, where a conflict of interest exists, courts should "adher[e] to the arbitrary and capricious principle, with special emphasis on reasonableness, but with the burden on the claimant to show that the decision was improperly motivated").

Firm's salary continuation program." AR at 3900. The record indicates that Lehman Brothers' salary continuation program paid Newman through most of her STD period, so the bulk of her STD benefit was paid to Lehman Brothers to recoup that expense. Id. at 513. Newman began receiving STD payments from Met Life once the salary continuation program was exhausted. Id.

Finally, Newman takes issue with Met Life's determination that she ceased working as of March 12, 2008. D. 163-1 at 2 (stating that Met Life told Newman that her STD benefits would begin on March 12, 2008 but asserting that she was not disabled on that date). Newman appealed to change the start date of her disability benefits to April 16, 2008 and Met Life upheld its determination. Id. Although the record indicates that Newman did not apply for STD benefits until April 16, 2008, Met Life explains that its determination of March 12, 2008 was based on the documentation provided by Newman's own physician. D. 162 at 6. As noted above, Newman's doctor wrote on March 12, 2008 that "[d]ue to [Newman's] condition I am recommending that she not return to work [until] further treatment and evaluation, which is scheduled for April 14th, 2008" and "[w]e are going to keep her out of work now." AR at 1730, 1731. Newman's doctor later confirmed that he "disabled [her] from work on 3/12/2008," AR at 3026, and that he advised her to stop working on March 12, 2008, AR at 2998, 3002. Finally, a form dated July 1, 2008 and signed by Newman's doctor states that Newman was unable to work starting March 12, 2008. Id. at 2923-24.

Because there is significant evidence supporting the March 12 date as the beginning of Newman's disability period, the Court concludes that Met Life's determination was not arbitrary and capricious. A decision that Newman was disabled as of March 12, 2008 can hardly be construed as adverse to her because it comports with the date provided by Newman's own

physician.[5]  In addition, it is unclear what, if anything, would be gained by Newman should the later date of April 16, 2008 apply.  As the Defendants point out, if Newman's STD benefits had begun at a later date, her LTD benefits also would have started later.  D. 162 at 7 n.3.  Newman's LTD benefit of $2,500 per month, however, was greater that her STD payment of $2,167 per month.  Id.  Newman appears to argue against her own interest, urging that the larger payments due under the LTD plan should have started later, resulting in a lower total benefit to her.

Newman does not explain how she was harmed by receiving STD benefits as of March 12, 2008.  One alleged basis for Newman's dismissed SOX claim was that certain defendants interfered with her benefits in retaliation for Newman reporting unlawful activity by Lehman Brothers.  D. 137 at 4 (citing D. 103 at 4 & ¶¶ 44-45).  Newman's continued assertion that her employer improperly submitted a claim for STD benefits may be an effort to resurrect the nullified SOX claim.  If so, that effort is misdirected.

### C.  Supplemental LTD Coverage

Newman's remaining argument is that Met Life wrongfully denied her claim for Supplemental LTD benefits.  D. 163-1 at 3; D. 103 ¶ 53.  The Court concludes that Met Life's determination was not arbitrary and capricious.

Newman did not obtain coverage prior to the date she stopped working due to her disability.  "A suit for benefits due under the terms of an ERISA-governed plan necessarily fails where the participant does not qualify for those benefits."  Weinreb v. Hospital for Joint Diseases Orthopaedic Inst., 404 F.3d 167, 170 (2nd Cir. 2005) (holding decedent's failure to enroll for life insurance precluded his wife from receiving benefits).  Because Newman did not enroll for

---

[5] At the hearing on this matter, Newman suggested a conspiracy to deem her disabled as of March 5, 2008, D. 167 at 20, 23, but such a suggestion has no support in the record since there was no evidence supporting that date and there were instead repeated references by Newman's own doctor to a disability date of March 12, 2008.

Supplemental LTD coverage when she began working for Lehman Brothers in 2007, she was required to prove good health by submitting and obtaining approval of a Statement of Health before she went out on disability. AR at 3902. The Plan makes clear that, to be eligible for coverage by the Supplemental LTD plan, an employee must be "working for the Employer doing all the material duties of your occupation at (i) your usual place of business; or (ii) some other location that your Employer's business requires you to be." AR at 3939 (Met Life Certificate of Insurance). In addition, the employee must not be on leave due to disability. Id. at 3940. Newman was apprised of these requirements by two letters from Met Life. Id. at 1026 (letter dated January 19, 2010); 250 (letter dated February 17, 2011); see id. at 1411-12 (letter dated July 22, 2009 advising Newman that she was not covered by the Supplemental LTD plan at the time she ceased working and that she must provide evidence of enrollment to receive benefits, including documentation demonstrating that she enrolled before she stopped working due to disability, she paid for the supplemental coverage, and she submitted proof of good health that was approved).

Newman maintains that she submitted the Statement of Health form on February 4, 2008, more than a month before the date Met Life indicates she stopped working. The record, however, does not support that assertion. In March 2009, Newman faxed a Statement of Health form dated October 8, 2008 to Met Life. In December 2009, Newman faxed a Statement of Health form dated February 4, 2008 to Met Life. Met Life twice informed Newman that it had not received a Statement of Health prior to December 2009, well after Newman's disability prevented her from working. AR at 250, 3653.

In a case with similar facts to the case at bar, another district court upheld the denial of supplemental life insurance benefits. Rowello v. Healthcare Benefits, Inc., No 12-4326, 2013

WL 6510475, at * 6 (D.N.J. Dec. 13, 2013). In Rowello, the plaintiff maintained that her decedent husband had submitted a form evidencing insurability in furtherance of his application for supplemental life insurance. Id. at * 1-2. The insurer denied receipt of the form. Id. at * 2. The decedent had paid the premium for the supplemental coverage for six years prior to his death. Id. The court concluded that the insurer's denial of benefits was reasonable because the plaintiff did not submit credible evidence that her husband had sent, and the insurer had received, the form. Id. at * 6. Similarly, here, Newman has not proffered credible evidence that she submitted the Statement of Health prior to the commencement of her disability or that Met Life confirmed her eligibility. See Kehoe v. Ryder Truck Rental, Inc., No. 05-2139, 2006 WL 2414197, at * 4-5 (E.D. La. Aug. 17, 2006) (holding insurer's denial of claim for supplemental benefits was not arbitrary and capricious where plaintiff did not complete, and insurer did not approve, statement of health).

In addition to disputing whether she submitted to the Statement of Health on February 4, 2008, Newman argues that she was entitled to Supplemental LTD coverage because "[o]n March 5, 2008, a qualified family status change occurred within 31 days of Plaintiff's election of Supplemental Benefits." D. 163-1 at 5. This argument is misguided for two reasons. First, the status change to which she refers is Lehman Brothers' "act of taking Plaintiff out of the Lehman Brothers system and placing her back in the system." Id. This action does not comport with any of the family status changes provided by the Plan: marriage (or domestic partnership); divorce; birth or adoption; spouse or partner's employment or unemployment; unpaid leave of absence; return of a dependent child to school; and death of a dependent. AR at 3902-03. Second, Newman incorrectly urges that her attempted enrollment was proper because it was within the 31-day period before the alleged status change. Even if Lehman Brothers' action was a status

13

change, Newman was required to enroll for Supplemental Coverage within 31 days *after* the qualifying event. Id.

Finally, the Defendants argue that, even if Newman had made a timely submission, the Statement of Health does not show that she was in good health in February 2008. D. 162 at 18-20. Because the Court concludes that Newman did not provide a Statement of Health to Met Life before she stopped working, a condition precedent to receiving Supplemental LTD coverage, the Court need not reach the argument that Newman's Statement of Health did not prove good health.

Nonetheless, the Court notes that Newman acknowledged that the burden was on her to show she was in good health for purposes of obtaining Supplemental LTD. D. 167 at 26. Newman's Statement of Health does not demonstrate that she was in good health when she purports to have sought Supplemental LTD coverage. Her form stated that she had COPD (chronic obstructive pulmonary disease), a serious medical condition. AR at 662. Newman subsequently claimed she reported COPD erroneously, AR at 756-57, indicating that she instead suffered from dyspnea, a breathing problem, id., a condition the Defendants argue is also significant. D. 162 at 20. On the Statement of Health, Newman does not disclose the effects of the injury that precipitated her disability leave.[6]  AR at 661-63.

---

[6]At the hearing on the pending motion, Newman argued that Met Life should have provided an independent medical examination in the course of evaluating her Statement of Health. D. 167 at 21. The Plan, however, makes no such requirement. AR 3902-03.

## V. Conclusion

For the foregoing reasons, the Defendants' motion for judgment on the administrative, D. 161, record is ALLOWED.

**So Ordered.**

/s/ Denise J. Casper<br>
United States District Judge